JS-6

FILED-SOUTHERN DIVISION
CLERK, U.S. DISTRICT COURT

SEP - 8 2016

CENTRAL DISTRICT OF CALIFORNIA
BY           DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN THE MATTER OF THE EXTRADITION OF<br><br>IVO KNOTEK,<br><br>A Fugitive from the Government of the Czech Republic. | Case No. LA CV 13-9204 BRO (JCG)<br><br>**MEMORANDUM AND ORDER CERTIFYING IVO KNOTEK AS EXTRADITABLE TO THE CZECH REPUBLIC** |

## I.

## BACKGROUND

On December 18, 2013, the United States of America (the "Government" or the "United States"), acting on behalf of the Czechoslovak Republic ("Czech Republic"), filed a request ("Request") for the extradition of Ivo Knotek ("Knotek") after he was convicted of attempted extortion under sections 8 and 235 of the Criminal Code of the Czech Republic ("Czech Criminal Code"). [Dkt. No. 33 at 6, 14-15, 18, 63-108.]

According to the Request, in 1999, Knotek tried to extort money from representatives of two companies. [*Id.* at 14-15.] On March 7, 2001, the Prague Municipal Court tried and found Knotek guilty of attempted extortion. [*Id.* at 6, 14-15, 18, 63-108.] Subsequently, Knotek filed an extraordinary appeal with the Supreme

Court of the Czech Republic, which was rejected on June 11, 2002. [*Id.* at 147-149.] In the same year, before serving out his sentence and during the pendency of his appeal, Knotek left the Czech Republic. [*Id.* at 18; Dkt. No. 53 at 15; Dkt. No. 66 at 44.] He later arrived in the United States on or near July 7, 2002. [Dkt. No. 33 at 18; Dkt. No. 53 at 17.]

On July 2, 2004, the Prague Municipal Court issued an international arrest warrant, charging Knotek with attempted extortion. [Dkt. No. 33 at 7, 14-19.]

On October 2, 2013, Knotek was placed under arrest within the Central District of California on a provisional extradition arrest warrant. [*See* C.D. Cal. Case No. 13-2421M, Dkt. No. 13.] Shortly thereafter, on December 6, 2013, the Government filed a "Memorandum of Points and Authorities Re Extradition of Ivo Knotek" ("Memorandum"). [*See id.*, Dkt. No 28.]

On June 2, 2014, the Government filed its Opening Brief in Support of Extradition ("Op. Br."), [Dkt. No. 53], and on August 15, 2014, Knotek filed his Opposition ("Opposition"), [Dkt. No. 66].

The Government filed a Reply on October 14, 2016, [Dkt. No. 87], and a Supplement to the Reply on October 28, 2014, [Dkt. No. 104]. Knotek subsequently filed a Response on October 29, 2014, [Dkt. No. 105], and a Surreply in Opposition to the Government's Request for Extradition, [Dkt. No 113].

On February 24, 2015, the Court held a hearing on this matter. [Dkt. No. 122.] On August 3, 2015, both parties filed post-hearing supplemental briefs concerning the Request. [Dkt. Nos. 137, 138.]

The Court has considered the parties' written submissions and oral arguments, and the documentary record in this case. For the reasons discussed below, the Court issues this Memorandum and Order certifying Knotek as extraditable to the Czech Republic.[1]

---

[1] The Court is authorized to preside over extradition proceedings. *See* 18 U.S.C. § 3184 (authorizing "any justice or judge of the United States, or any magistrate judge [so] authorized . . . by

## II.
## DISCUSSION

As a general matter, "[e]xtradition from the United States is a diplomatic process that is initiated when a foreign nation requests extradition of an individual from the State Department." *Manta v. Chertoff*, 518 F.3d 1134, 1140 (9th Cir. 2008) (internal quotation marks omitted); *see also* 18 U.S.C. § 3184.

If the State Department determines that the request is within the scope of a relevant extradition treaty, then a United States Attorney initiates a proceeding in federal district court, requesting that the individual be certified as extraditable to the requesting nation. *See Manta*, 518 F.3d at 1140.

Thereafter, the extradition judge must conduct a hearing to determine "whether (1) the crime is extraditable; and (2) there is probable cause to sustain the charge." *Prasoprat v. Benov*, 421 F.3d 1009, 1012 (9th Cir. 2005) (internal citation and quotation marks omitted). Importantly, the judge "has no discretionary decision to make." *See id.* (internal citation and quotation marks omitted). Thus, if the judge finds that both prongs are satisfied, the judge "*must* certify the individual as extraditable to the Secretary of State." *Id.* at 1014 (emphasis in original).

### A.  Extraditability of the Crime

Under the first prong of the extradition inquiry, the Court must determine whether "the crime is extraditable." *Id.* at 1012. That is, the Court must determine whether: (1) a valid extradition treaty exists between the two countries; and (2) Knotek's crime is within the scope of that treaty. *See In re Extradition of Sainez*, 2008 WL 366135, at *3 (S.D. Cal. Feb. 8, 2008) ("In determining whether the subject crimes are extraditable offenses, the Court must find that an extradition treaty exists between the United States and [the foreign country], and that the crimes charged are covered by the treaty.").

---

a court of the United States," to conduct extradition hearings); C.D. Cal. Gen. Order No. 05-07 (authorizing magistrate judges to conduct extradition proceedings).

### 1. A Valid Extradition Treaty Exists

First, the Court finds that there is a valid extradition treaty between the United States and the Czech Republic, as the Government has submitted:

- A declaration from Kenneth R. Propp of the State Department, dated July 2, 2010, which verifies that that the "relevant and applicable treaty provisions" between the United States and the Czech Republic are in full force and effect, and are found in the 1925 U.S.-Czechoslovakia Extradition Treaty and the 1935 Supplementary Treaty, as amended and supplemented by the U.S.-Czech Second Supplementary Treaty, signed May 16, 2016 (collectively, the "Treaty"), (*see* Memo., Ex. F at 3 ¶ 3); and
- A copy of the entire Treaty, (Memo., Ex. C).

Moreover, Knotek does not contest that the Treaty is in full force and effect. (*See* Opp. at 10-11.) Accordingly, the Court finds that a valid treaty exists between the U.S. and Czech Republic. *See In re Flores Ortiz,* 2011 WL 3441618, at *4 (S.D. Cal. Feb. 9, 2011) (finding the existence of a valid treaty between the U.S. and another country based on similar submissions by the Government); *see also In re Extradition of Mainero*, 990 F. Supp. 1208, 1217 (S.D. Cal. 1997) ("The Department of State[]'s opinion [that an extradition treaty is in full force and effect] is entitled to deference.").

### 2. Knotek's Crime is Within the Scope of the Treaty

Second, the Court finds that Knotek's crime – attempted extortion – is covered by the Treaty, pursuant to Article II: "A crime or offense shall be an extraditable crime or offense if it is [(1)] *punishable under the laws of the Requesting and Requested States* [(2)] by deprivation of liberty for a maximum period of *more than one year* or by a more severe penalty." *See* Treaty, T.I.A.S. No. 10-201.5, art. II (emphasis added).

#### a. Dual Criminality

The requirement that the offense be punishable by the laws of both States is known as "dual criminality," and requires only that the underlying conduct – rather than the legal elements for establishing the crime – be "substantially analogous." *See*

*In re Extradition of Gonzales*, 2012 WL 1215237, at *3 (N.D. Cal. Apr. 10, 2012). Under sections 8 and 235 of the Czech Criminal Code, attempted extortion is a criminal act. [*See* Dkt. No. 33 at 15-16 (criminalizing the attempt at "forc[ing] another to do something, not to do something or to tolerate something by violence, the threat of violence or threat of other grave harm").]

Similarly, under U.S. law, attempted extortion is a criminal act. *See* 18 U.S.C. § 1951(a) ("Whoever in any way or degree obstructs, delays, or affects commerce . . . by . . . extortion or *attempts* . . . so to do . . . shall be fined . . . or imprisoned . . . .") (emphasis added); 18 U.S.C. § 1951(b) (defining "extortion" as "obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right"). Importantly, "property" under §1951 refers not only to tangible items, but also to "[t]he right to make business decisions and to solicit business free from wrongful coercion." *United States v. Zemek*, 634 F.2d 1159, 1174 (9th Cir. 1980).

Although the Czech Criminal Code does not explicitly include the element of "wrongfulness" in its description of extortion, the underlying conduct – forcing another to do something against his/her will by threatening him/her – is substantially analogous under the laws of both nations. *See In re Extradition of Gonzales*, 2012 WL 1215237, at *3; *Matter of Extradition of Russell*, 789 F.2d 801, 803 (9th Cir. 1986) ("[T]o satisfy the 'dual criminality' requirement, [the] element[s] of the offense [] committed in a foreign country need not be identical to [those of a] similar offense in the United States."); *cf. also Kelly v. Griffin*, 241 U.S. 6, 14 (1916) (finding that perjury was an extraditable offense under Canada/United States treaty although Canadian law did not require that the false evidence be "material"). Thus, the "dual criminality" requirement set forth in Article II of the Treaty is met here.

    b. <u>Punishable By Imprisonment for More than One Year</u>

Also, the duration-of-punishment requirement is satisfied, as attempted extortion is punishable by imprisonment for more than a year under 18 U.S.C. § 1951(a) in the

United States, and Czech Criminal Code §§ 8, 235(1) in the Czech Republic. [*See* Dkt. No. 33 at 16.]

Accordingly, the Court finds that that Knotek's crime is within the scope of a valid treaty, and thus extraditable.

### 3. Knotek's Challenges to Extraditability

#### a. Knotek's U.S. Citizenship

Knotek argues that the Treaty does not allow for the extradition of a U.S. citizen like himself,[2] (*see* Opp. at 7-11), insofar as Article VIII of the Treaty stipulates that "neither of the High Contracting Parties shall be bound to deliver up its own citizens." *See* Treaty, art. VIII. However, this provision, by its plain words, does not bar either country from extraditing its own citizens. *See Emma v. Eastin*, 2015 WL 7776508, at *4 (N.D. Cal. Dec. 3, 2015) (equating the notion that a court is "not bound" to do an act with permissive – rather than mandatory – language).

Furthermore, 18 U.S.C. § 3196 specifically permits the extradition of U.S. citizens under such treaties: "If the applicable treaty . . . does not obligate the United States to extradite its citizens . . . the Secretary of State may, nevertheless, order the surrender . . . of a United States citizen whose extradition has been requested . . . if the other requirements of that treaty or convention are met." 18 U.S.C. § 3196.

Although Knotek argues that § 3196 is an "unconstitutional attempt to amend [the Treaty]," [*see* Opp. at 14], the Court finds the argument unpersuasive and contrary to Congress's express authority to confer extradition powers by legislation. *See Ravelo Monegro v. Rosa*, 1999 WL 38906, at *2 (N.D. Cal. Jan. 28, 1999) ("Congress' decision to use a statute to empower the Secretary of State to extradite U.S. citizens is consistent with [a treaty stipulation that the United States is not bound to extradite its own citizens]."); *see also Hilario v. United States*, 854 F. Supp. 165, 173 (E.D.N.Y. 1994) ("Congress's intent in enacting § 3196 was to empower the Secretary of State to

---

[2]   The Government does not dispute that Knotek is an American citizen. (*See* Op. Br. at 2, 27); [*see also* Dkt. No. 33 at 159].

extradite American citizens when . . . extradition treaties [] themselves conferred no such authority. . . . [T]he power to extradite can be conferred [] by legislation . . . .") (citing *Valentine v. United States ex rel. Neidecker*, 299 U.S. 5, 18 (1936))).

Accordingly, there is no bar to Knotek's extradition either in the Treaty or § 3196.[3]

### b. Statute of Limitations

Knotek also argues that because the statute of limitations on carrying out previously imposed sentences is five years under the Czech Criminal Code, [*see* Dkt. No. 33 at 17], Knotek cannot be extradited, (*see* Opp. at 34-35). Under the Czech Criminal Code: (1) the period of limitation begins "when the ruling comes into force"; and (2) "[t]he period for which it was not possible to execute the punishment because the convict was abroad . . . is not included in the period of limitation." [*See id.* at 17.]

Here, Knotek's ruling came into force on either March 7, 2001, when Knotek was sentenced by the Prague Municipal Court, or on June 11, 2002, when the Supreme Court of the Czech Republic rejected Knotek's appeal. [*See* Dkt. No. 33 at 6, 147-149.] Notably, Knotek left the Czech Republic sometime between February 28, 2002, and June 11, 2002, [*see id.* at 18]; (*see also* Op. Br. at 6; Opp. at 35). Because Knotek has been abroad since that time, there are approximately four years or more – starting from the day that Knotek returns to the Czech Republic – remaining in the limitations period. [*See* Dkt. No. 33 at 17.] Accordingly, the limitations period for carrying out Knotek's sentence has not expired under the Czech Criminal Code.

---

[3] Knotek argues that judicial estoppel bars the Government from arguing that § 3196 applies to this extradition proceeding, (*see* Opp. at 9), while the Government denies that it held inconsistent positions with respect to the statute's applicability, [*see* Dkt. No. 99 at 14]. Irrespective of any argument that the Government may have advanced, the Court's sole task at this juncture is to determine whether Knotek is extraditable. *See Prasoprat*, 421 F.3d at 1012. To that end, the Court is bound by and applies § 3196. *See In re Extradition of Gohir*, 2014 WL 2123402, at *6 (D. Nev. May 21, 2014) ("The process of formal extradition is governed . . . by . . . the provisions of [§ 3196].").

### B. Probable Cause

Under the second prong of the extradition inquiry, the Court must determine whether "there is probable cause to sustain the charge." *Prasoprat*, 421 F.3d at 1012.

As a rule, probable cause is established if "there [is] *any* evidence warranting the finding that there was a reasonable ground to believe the accused guilty." *Mirchandani v. United States*, 836 F.2d 1223, 1226 (9th Cir. 1988) (emphasis added). Notably, a foreign conviction – resulting from a trial at which the extraditee was present – warrants a probable cause finding. *See, e.g., In re Extradition of Hughes*, 2013 WL 1124294, at *6 (C.D. Cal. Mar. 18, 2013) ("Where, as here, the fugitive has already been convicted, the conviction is dispositive of the issue of probable cause."); *United States v. Vigil*, 2013 WL 314755, at *3 (E.D. Cal. Jan. 25, 2013) ("[A] conviction is dispositive of the probable cause issue [in an extradition analysis]."); *Haxhiaj v. Hackman*, 528 F.3d 282, 290 (4th Cir. 2008) ("A foreign conviction entered after a trial at which the defendant was present suffices, in and of itself, to establish probable cause.").

#### 1. Evidence Supporting Probable Cause

Here, the Court finds that the evidence assembled by the Czech Republic authorities and presented by the Government[4] indicates that Knotek: (1) was convicted of two counts of attempted extortion at trial; and (2) Knotek was present at the trial and subsequent proceedings. [*See* Dkt. No. 33 at 14, 18.]

Specifically, the Prague Municipal Court (the "Municipal Court") found that in 1999, Knotek had: (1) told a representative of a company ("Teleaxis") that, unless Knotek received CZK 2.5 million, he would use his influence to prevent the

---

[4] The documents submitted by the Czech Republic in support of the Request bear the seal of the Czech Republic Ministry of Justice. [*See* Dkt. No. 33 at 7, 156.] Accordingly, the documents are admissible in this proceeding. *See* Treaty, T.I.A.S. No. 10-201.5, art. XI ("Documents that bear the certificate or seal of the Ministry of Justice . . . of the Requesting State shall be admissible in extradition proceedings in the Requested State . . . ."); *see also In Matter of Extradition of Azizi*, 2015 WL 1299791, at *6 (N.D. Cal. Mar. 20, 2015) (finding that documents bearing the seal of the requesting state's Ministry of Justice are authenticated and admissible in extradition proceedings).

counterparty from signing a major contract with Teleaxis; and (2) threatened a representative of another company ("Eurotel") that he would go public with information regarding Eurotel's alleged misdeeds unless he received USD 50,000 and business amounting to CZK 23 million. [*See* Dkt. No. 33 at 14-15.] The Municipal Court based its findings on: (1) documentary and other evidence retrieved during a police search of Knotek's home; (2) a video recording indicating that Knotek "demanded significant financial sums in exchange for . . . ensuring that [Eurotel's] problem was not exposed . . . ."; and (3) testimony from both companies' employees. [*See id.* at 66, 73, 76-77.] Thus, even if Knotek's conviction were not dispositive of a probable cause finding, which it is, there was "competent evidence to support the belief that the accused has committed the charged offense." *See Quinn v. Robinson*, 783 F.2d 776, 815 (9th Cir. 1986); *see also In re Extradition of Santos,* 795 F. Supp. 2d 966, 972 (C.D. Cal. 2011) (finding the testimony and statements of several witnesses are sufficient for a probable cause finding).

### 2. Knotek's Challenges to Probable Cause

#### a. "Corrupt" Conviction

First, Knotek argues that his conviction was obtained as a result of the "prosecution and legal proceedings in the Czech Republic" being "tainted by corruption."[5] (*See* Opp. at 34.) Specifically, he claims that "many of the individuals involved [in his criminal proceedings] were formerly involved in the Communist regime," which Knotek fled in 1977. (*Id.*)

Pursuant to the rule of non-inquiry, challenges to the legal processes and penal systems of a foreign country – such as a claim that a foreign country's legal proceedings are corrupt – cannot be considered by extradition courts. *See, e.g., In re Extradition of Singh*, 2005 WL 3030819, at *65 (E.D. Cal. Nov. 9, 2005) ("The rule [of non-inquiry] requires that extradition courts not undertake inquiries into the justice system of foreign

---

[5] Knotek reiterated similar arguments in a separate letter to the court. [*See* Dkt. No. 139.]

countries . . . ."); *Lopez-Smith v. Hood*, 121 F.3d 1322, 1327 (9th Cir. 1997) ("[U]nder what is called the 'rule of non-inquiry' in extradition law, courts in this country refrain from examining the penal systems of requesting nations . . . ."); *Matter of Requested Extradition of Smyth*, 61 F.3d 711, 714 (9th Cir. 1995) ("Undergirding [the rule of non-inquiry] is the notion that courts are ill-equipped . . . and ill-advised . . . to make inquiries into and pronouncements about the workings of foreign countries' justice systems."), *amended sub nom. Matter of Smyth*, 73 F.3d 887 (9th Cir. 1995).

    b. <u>No Criminal Activity</u>

  Second, Knotek argues that his actions – which were the bases for the attempted extortion conviction – amounted to "aggressive negotiating" rather than anything criminal. (*See* Opp. at 32.)

  As a rule, an extraditee's post-conviction "assertions" explaining the innocence of his actions "do[] not permit the [extradition court] to go behind the conviction[] and retry the matter." *Vigil*, 2013 WL 314755, at *4. Furthermore, "evidence of facts which establish a defense . . . are properly excluded in extradition proceedings." *Ortiz*, 2011 WL 3441618, at *12 (S.D. Cal. Feb. 9, 2011) (citing *Hooker v. Klein*, 573 F.2d 1360, 1368-69 (9th Cir. 1978)).

  Thus, Knotek's arguments in support of his innocence have no bearing on the extradition analysis, especially in light of his conviction. *See Quinn*, 783 F.2d at 815 (finding that an extradition court "does not weigh conflicting evidence and make factual determinations").

  C. <u>Knotek's Requests</u>

  Relatedly, Knotek requests that, in the event that certification is granted, the Court: (1) specify that the Czech Republic is obligated to punish Knotek only for those crimes for which he is extradited ("Special Request"); (2) hold Knotek on bond even after certifying extraditability ("Bond Request"); and (3) stay the Certification Order while he prepares a habeas petition ("Stay Request") (collectively, "Knotek's Requests"). [*See* Dkt. No. 137 at 2-7.]

For the reasons discussed below, Knotek's Requests, (*id.*), are **DENIED**.

1. Law of Specialty

First, in his Special Request, Knotek seeks a guarantee that the Czech Republic will only punish him for those crimes for which he is extradited. [*See id.* at 2-4.]

Generally, "[t]he doctrine of specialty prohibits [a] requesting nation from prosecuting [an] extradited individual for any offense other than that for which the surrendering state agreed to extradite." *Barapind v. Enomoto*, 360 F.3d 1061, 1076 (9th Cir. 2004), *on reh'g en banc*, 400 F.3d 744 (9th Cir. 2005) (internal citation and quotation marks omitted). However, this doctrine is to be applied by the Secretary of State, not the court of certification. *See id.* at 1077 (finding that the Secretary of State and Executive Branch have the duty to apply the law of specialty); *see also In re Extradition of Handanovic*, 829 F. Supp. 2d 979, 991 (D. Or. 2011) (finding that: (1) the Secretary of State is responsible for enforcing specialty; and (2) there is no standing to assert a breach of the rule of [specialty] until after the certification order is granted).

Accordingly, the Court lacks jurisdiction to issue the guarantee sought by Knotek, and therefore denies Knotek's Special Request.

2. Holding Knotek on Bond

Second, in his Bond Request, Knotek seeks to remain on bond even after the Court certifies his extraditability. [*See* Dkt. No. 137 at 4-5.]

However, "[t]here is a presumption against bail in an extradition case and only 'special circumstances' will justify bail." *Salerno v. United States*, 878 F.2d 317, 317 (9th Cir. 1989) (denying bail for petitioner after order certifying extraditability). Examples of such "special circumstances" include "the raising of substantial claims upon which the appellant has a high probability of success, a serious deterioration of health while incarcerated, and unusual delay in the appeal process." *Id.*

Here, Knotek fails to allege, and the record fails to reveal, any such "special circumstances." Thus, the Court denies Knotek's Bond Request.

11

### 3. Habeas Petition

Third, in his Stay Request, Knotek asks the Court to stay its Certification Order so that Knotek can prepare and file a habeas petition. [*See* Dkt. No. 137 at 5-7.]

As a rule, courts consider three factors before issuing a stay: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably harmed absent a stay; and (3) where the public interest lies.[6] *See Gamez v. Stafford*, at *1 (S.D. Cal. Sept. 25, 2012); *Matter of Extradition of Lang*, 905 F. Supp. 1385, 1390 (C.D. Cal. 1995).

#### a. Probability of Success on the Merits

"At a minimum," Knotek must present a "substantial case for relief on the merits." *See Gamez*, 2012 WL 4471579, at *1. Here, Knotek will likely advance the same arguments in his habeas petition as those presented above in opposition to the Government's Request. *See Prasoprat*, 421 F.3d at 1013 (finding that habeas review of a certification order involves an analysis of the same factors considered in issuing the order). For the reasons stated above, those arguments will likely fail. As such, Knotek fails to establish that there is a probability of success on the merits of his eventual habeas petition.

#### b. Irreparable Injury

Next, the "possibility of irreparable injury" to Knotek if the Court denies his Stay Request "is evident," as he will not have the opportunity to seek habeas review of the Certification Order. *See Artukovic v. Rison*, 784 F.2d 1354, 1356 (9th Cir. 1986).

#### c. Public Interest

Finally, Knotek "must show that the interests of the Government and the public, which are the same for purposes of [a request to stay], favor a stay of the [C]ertification [O]rder." *See Gamez*, 2012 WL 4471579, at *3. Notably, (1) "[t]he

---

[6] Although courts also consider the "prejudice to the nonmoving party" in deciding requests to stay, this factor merges with the "public interest" factor when the nonmoving party is the Government. *See Gamez*, 2012 WL 4471579, at *1.

public undoubtedly has an interest in ensuring substantive and procedural compliance with the United States' extradition laws[]"; (2) "[t]he public . . . has an interest in seeing to it that legally-supported extraditions actually occur in a timely manner"; and (3) "[Knotek] has not demonstrated that he is incapable of defending himself [in a foreign tribunal]," to the extent that he will have to despite already having been convicted. *See Gamez*, 2012 WL 4471579, at *3.

Accordingly, based on an analysis of the relevant factors, the Court denies Knotek's Stay Request.

### III.
### CONCLUSION

For the foregoing reasons, the Court **CERTIFIES** to the Secretary of State that Knotek is extraditable to the Czech Republic for the crime of attempted extortion. *See* 18 U.S.C. § 3184.

**IT IS ORDERED** that the attorney for the United States forthwith deliver transcripts of all proceedings before this Court and copies of documents received as evidence to the Clerk of the Court. The Clerk of the Court shall then forward the transcripts, documents, and a certified copy of this Extradition Certification to the Secretary of State.

**IT IS FURTHER ORDERED** that Ivo Knotek surrender himself to the United States Marshals Service of this District by noon, **September 19, 2016**, as the conditions of his release are now revoked.

DATED: 9.8.2016

Hon. Jay C. Gandhi
United States Magistrate Judge